1

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3

4

5

6

7

8

| | | |
|---|---|---|
| SHIMON MOALEM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:18-cv-02341-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| INTERNATIONAL SPA ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

9

10

11

12

       Pending before the Court is Defendant International SPA Association's ("Defendant's") Second Motion for Summary Judgment, (ECF No. 33). Plaintiff Shimon Moalem ("Plaintiff") filed a Response, (ECF No. 35), and Defendant filed a Reply, (ECF No. 36). For the reasons discussed below, the Court **GRANTS** Defendant's Motion.

13

## I.    BACKGROUND

14

15

16

17

18

19

20

21

22

23

24

25

       This case arises from Plaintiff's allegation that Defendant's employees unjustifiably removed Plaintiff's employees from a trade show, directing a religious and ethnic slur at Plaintiff in the process. (*See generally* Am. Compl. ECF No. 23). Plaintiff owns and operates Shimi Sales Training LLC, d/b/a Forever Young ("Forever Young"), a skincare company. (*See* Exhibitor Agreement, Ex. A to Def.'s Mot. Summ. J. ("MSJ"), ECF No. 33-1). Forever Young executed an online booth contract (the "Agreement") to become an exhibitor at Defendant's 2018 ISPA Conference Expo (the "Expo") in Phoenix, Arizona. (*Id.*). The Agreement contained a "no cash and carry policy," (the "Policy") which prohibited exhibitors from receiving payment or delivering their products within the Expo. (*Id.*). The parties dispute whether Forever Young violated the Policy by selling its products at the Expo. (Moalem Aff. ¶ 6, Ex. 1 to Pl.'s MSJ Resp. ("Resp."), ECF No. 35); (Security Incident Report, Ex. C to MSJ, ECF No. 33-3).

This suit concerns the events that transpired after Forever Young's alleged product sales at the Expo. Defendant alleges that, after multiple members of its staff witnessed Forever Young's employees violating the Policy, Defendant's representatives ordered Forever Young to stop selling its products on the Expo floor. (*See* Security Incident Report, Ex. C to MSJ); (Ducker Decl. ¶ 5, Ex. E to MSJ, ECF No. 33-5); (McNees Decl. ¶ 5, Ex. F to MSJ, ECF No. 33-6). After Forever Young allegedly ignored the warning, the contracted head of security for the event, a representative from the Phoenix Convention Center, and two of Defendant's employees asked Forever Young to leave the Expo. (Security Incident Report, Ex. C to MSJ). Defendant alleges that after thirty minutes of Forever Young's refusal to comply, Forever Young's employees were escorted from the event. (*See Id.*). Plaintiff alleges that Defendant's employees singled out Plaintiff's employees because of Plaintiff's religion and national origin, allegedly expressing during the dispute that, "Israelis and Jew [sic] always cause a problem." (Moalem Aff. ¶ 6, Ex. 1 to Resp.); (Am. Compl. ¶¶ 12, 21, 31). Defendant denies that anyone at the scene used the alleged slur. (*See* Ducker Decl. ¶ 7, Ex. E to MSJ); (McNees Decl. ¶ 7, Ex. F to MSJ). Plaintiff was not physically present at the Expo, but his employees had him on the phone during the conflict. (Moalem Aff. ¶ 6, Ex. 1 to Resp.).

Plaintiff's Amended Complaint raises claims for: (1) Defamation (Slander Per Se), (Am. Compl. ¶¶ 17–27); (2) Breach of the Covenant of Good Faith and Fair Dealing, (*Id.* ¶¶ 28–37); and (3) Interference with Prospective Business Opportunities, (*Id.* ¶¶ 38–42). Defendant now moves for summary judgment. (*See* MSJ, ECF No. 33).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III.   __DISCUSSION__

Plaintiff fatally erred by neglecting to provide evidence in support of his claims when responding to Defendant's Motion for Summary Judgment.  The lone piece of evidence Plaintiff provides is his own affidavit, which contains only one paragraph attesting to any facts in issue.  The paragraph provides:

> I affirm that I was present during the referenced incident at the Expo, as I was communicating on the speaker of a cell phone.  I heard Defendant's false allegations that my workers had sold items and then I heard the Manager and/or Security Guard begin using racial slurs against me and my workers.  It was clear to me that when the Defendant falsely accused us of selling our products, the Defendant was singling us out because of my religion and national origin.

(Moalem Aff. ¶ 6, Ex. 1 to Resp., ECF No. 35).  Viewed in the light most favorable to Plaintiff, the allegation establishes: (1) Plaintiff could hear the incident at the Expo from his cell phone; (2) the "Manager and/or Security Guard" directed slurs at Plaintiff and his employees based

upon Plaintiff's religion and national origin; and (3) Plaintiff's employees did not sell products on the Expo floor in violation of the Agreement. (*Id.*).  In light of the evidence submitted by Defendant and Plaintiff's burden to establish the essential elements of his claims at trial, the facts alleged in Plaintiff's affidavit fall well short of meeting Plaintiff's burden at summary judgment.[1]  The Court now addresses each of the claims raised in the Amended Complaint.

### A.    Defamation (Slander Per Se)

To succeed on a defamation claim in Nevada, a plaintiff must prove: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)).  Furthermore, to constitute slander per se, the alleged defamation must be oral and must fall into one of four categories: (1) that the plaintiff committed a crime; (2) that the plaintiff has contracted a loathsome disease; (3) that a woman is unchaste; or, (4) the allegation must be one which would tend to injure the plaintiff in his or her trade, business, profession or office. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).

A statement may only be defamatory if it contains a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000) (reversed in part on other grounds).  The determination of whether a statement is capable of a defamatory construction is a question of law. *Branda v. Sanford*, 637 P.2d 1223, 1225–26 (Nev. 1981).  "In reviewing an allegedly defamatory statement, the words must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Lubin v. Kunin*, 17 P.3d 422, 425–26 (Nev. 2001) (internal quotations omitted).  In Nevada, in order to

---

[1] Plaintiff makes allegations beyond those in the Affidavit in his Amended Complaint and Response to Defendant's Motion, but the allegations are not evidence that the Court may consider in its summary judgment analysis. *See United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995) ("The government's assertions in its pleadings are not evidence."); *S. Pac. Co. v. Conway*, 115 F.2d 746, 750 (9th Cir. 1940) ("[T]he office of a pleading is to state ultimate facts and not evidence of such facts.").

determine if a statement is one of fact or opinion, "the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002); *see also, Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001). If a statement is susceptible to different constructions, resolution of any ambiguity is a question of fact for the jury. *Branda*, 637 P.2d at 1225–26.

Defendant argues that it should be granted summary judgment on Plaintiff's defamation claim because: (1) the alleged defamatory statement is opinion, not fact; and (2) Plaintiff has not shown that an agent of Defendant made the alleged defamatory statement. (MSJ 6:16–10:25). The Court agrees. Even if Plaintiff had provided evidence that the alleged defamatory statement was made, a reasonable person would understand the statement to connote the declarant's opinion of Israelis and Jewish persons, not that they do, in fact, always cause trouble. A reasonable person would be likely to understand the remark, as distasteful and ugly as it is, as an expression of the source's opinion not as a statement of existing fact. Additionally, Plaintiff bears the burden to show that the statement was actually made and is attributable to Defendant. Here, Plaintiff has submitted no such evidence sufficient to create a genuine dispute of fact. The sole relevant piece of evidence Plaintiff submits is his own sworn statement generally saying, "I heard the Manager and/or Security Guard begin using racial slurs against me and my workers." (Moalem Decl., Ex. 1 to MSJ Resp). The allegation falls well short of satisfying Plaintiff's burden. *See Celotex Corp.*, 477 U.S. at 323–24. In addition, even if Plaintiff's evidence showed that a specific statement was made and that the statement published a fact regarding Plaintiff, Defendant has presented uncontroverted evidence that any alleged statement, if uttered, was made by someone else, an employee of the venue and not made by an agent of Defendant. (*Compare* Am. Compl. ¶ 12) (identifying the "manager" as male); (*with* Ducker Decl. ¶ 6, Ex. E to MSJ Resp.) (identifying Crystal Ducker and Amber

Phillips as the only representatives of Defendant present when Forever Young was removed from the Expo); (Security Incident Report, Ex. C to MSJ Resp.) (identifying the security services as having been provided by a contractor not named in this action).  Thus, the Court grants Defendant summary judgment on Plaintiff's defamation claim.

### B.   Breach of Implied Covenant of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Crow v. Home Loan Ctr.*, No. 3:11-cv-00259-LRH-VPC, 2011 U.S. Dist. LEXIS 60312, 2011 WL 2214118, at * 2 (D. Nev. 2011).  Where the plaintiff seeks a remedy for breach of the implied covenant of good faith and fair dealing arising from the existence of a contract—in contrast with a duty arising from a special relationship in tort—the available remedy is contract damages. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 1207, 1209 (Nev. 2013); *see also Mort Wallin v. Comm. Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989) (requiring a plaintiff to show "the fact of damages and the amount thereof").

Defendant argues that the Court should grant summary judgment against Plaintiff's claim alleging breach of the implied covenant of good faith and fair dealing because (1) Plaintiff breached the subject contract, and (2) Plaintiff has not sustained damages.  The parties dispute whether Plaintiff breached the "no cash and carry" provision of the Agreement. (*See* Moalem Aff. ¶ 6, Ex. 1 to MSJ Resp.); (Ducker Decl. ¶ 5, Ex. E to MSJ); (McNees Decl. ¶ 5, Ex. F to MSJ).  However, Defendant provides uncontroverted evidence that Plaintiff has not

carried his burden to show contract damages.  Plaintiff paid $3,920.00 under the Agreement to participate in the Expo, which Defendant returned in full. (*See* Refund Email, Ex. D to MSJ, ECF No. 33-4) (showing PayPal records verifying that $3,920.00 was returned to Plaintiff as a full refund under the Exhibition Agreement).  Accordingly, the Court grants Defendant summary judgment on this claim.

### C.    Interference with Prospective Business Opportunities

A prima facie showing of intentional interference with prospective economic advantage requires: (1) a prospective contractual relationship between the plaintiff and a third party, (2) defendant's knowledge of the prospective relationship, (3) intent to harm the plaintiff by preventing the relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff as a result of the defendant's conduct. *J.J. Industry, LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Defendant argues that it should be granted summary judgment on Plaintiff's tortious interference claim because Plaintiff has provided no evidence throughout discovery whatsoever of a prospective business relationship Plaintiff had with a third party, that Defendant knew of the prospective relationship, or that Defendant intended to harm plaintiff by preventing the relationship.  The Court agrees.  Even if Plaintiff could establish the first two elements merely by demonstrating Defendant's interference with Plaintiff's participation at a trade show, Plaintiff bears the burden to show that Defendant intended to harm Plaintiff, and Plaintiff has presented no evidence to that effect.  Therefore, the Court grants Defendant summary judgment on Plaintiff's tortious interference claim.

//

//

//

//

1  //

2  //

3  **IV.**    <u>**CONCLUSION**</u>

4       **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF

5  No. 33), is **GRANTED**.

6       The Clerk of Court shall close the case and enter judgment accordingly.

7       **DATED** this __29__ day of September, 2020.

8

9

10  _____

11  Gloria M. Navarro, District Judge
    United States District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25